UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE PRESTON GROUP, LLC, | : |
| Plaintiff, | : |
| v. | : No. 5:20-cv-06516 |
| CUSTOMERS BANK, CUSTOMERS BANCORP, INC., TIMOTHY D. ROMIG, and JOHN TIMOTHY ANDERSON, | : |
| Defendants. | : |

**<u>O P I N I O N</u>**

**Defendants' Motion to Dismiss Plaintiff's Complaint, ECF No. 3—GRANTED, in part**

**Joseph F. Leeson, Jr.**　　　　　　　　　　　　　　　　　　　　　　　　　　**August 12, 2021**
**United States District Judge**

**I.　　INTRODUCTION**

This is a copyright infringement, misappropriation of trade secrets, and breach of contract action.  Plaintiff, The Preston Group, LLC ("Preston") is a consulting firm that advises financial institutions on their participation in Small Business Administration lending.  Beginning in June 2020, Preston began developing multiple versions of its Paycheck Protection Program ("PPP") Forgiveness Workbooks, which, pursuant to a Consulting Agreement, it permitted Defendant Customers Bank to access and use.  Preston alleges that in publishing screenshots of its proprietary PPP Workbooks on a website for use by customers and other third parties, Customers Bank and related entities and individuals ("Defendants") violated the terms of the Consulting Agreement and are liable for copyright infringement, breach of contract, unfair competition, and misappropriation of trade secrets.

Defendants now move to dismiss Preston's Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which Preston opposes. For the reasons set forth below, the motion to dismiss is granted, in part, and denied, in part.

## II.  BACKGROUND

### A.  Facts Alleged in the Complaint[1]

Preston created each of the multiple at-issue PPP Workbooks—which are interactive Microsoft Excel programs that contain uniquely organized information and equations for a user to make calculations related to PPP loan forgiveness—between June and September 2020 and has continued to develop them since. *See* Complaint ("Compl."), ECF No. 1, ¶¶ 25-28, 31. The PPP Workbooks are wholly original and contain proprietary trade secrets and other confidential information. *Id*. ¶¶ 32, 34. According to Preston, it is the exclusive owner of all rights, title, and interest, including all rights under copyright, in the PPP Workbooks.[2] *Id*. ¶ 32. More specifically, Preston states that it is the owner of the valid and subsisting United States Copyright Registration No. TX0008921130 for PPP Workbook 3.3 08.31.2020 1000, issued by the United States Copyright Office on November 25, 2020. *Id*. ¶ 33.

Since creation of the PPP Workbooks, Preston has restricted access to the Workbooks by only publishing, distributing, advertising, and offering them to third parties who are subject to strict licensing and confidentiality obligations. *Id*. ¶ 38. To that end, Preston and Customers

---

[1]  These allegations are accepted as true, with all reasonable inferences drawn in Preston's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). However, neither conclusory assertions nor legal contentions need be considered by the Court in determining the viability of Preston's claims. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

[2]  The Court recognizes that this and similar allegations are legal conclusions.

Bank entered into a Consulting Agreement for use of the PPP Workbooks on June 10, 2020.[3]  *Id*. ¶ 43.  The Consulting Agreement expressly states that Preston would provide Customers Bank with consulting services related to the Small Business Association 7(a) Loan Program, and that the findings, conclusions, and opinions arrived at through the consulting services are for Customers Bank's "internal use only and are not to be relied upon by any third party without the specific written permission of" Preston.  *Id*. ¶¶ 44-45.  Similarly, the Consulting Agreement expressly provides that the parties "agree to keep all [confidential] information confidential and not to discuss or divulge it to anyone other than with its appropriate personnel or designees."  *Id*. ¶ 47.

The key provisions of the Consulting Agreement as relevant to the instant dispute are Sections 9.A and 9.B, which provide in full, as follows:[4]

> **9. Ownership of Work Product.**
>
> **A.** Consultant agrees that all Deliverables generated or developed by Consultant under this Agreement or furnished by Company to Consultant, all plans, drafts, concepts, preliminary work, data, documentation, materials, information, methods, software, systems, and any derivatives of any of the foregoing prepared, developed, conceived, or delivered as part of or in connection with the Services or Deliverables and all tangible embodiments thereof (any of the foregoing, "Work Product"), shall be and remain the property of Company. Without in any way limiting the generality of the foregoing, Consultant specifically agrees that all copyrightable material generated or developed under this Agreement shall be considered works made for hire and that upon creation such material shall be owned exclusively by Company. If, and to the extent, that under applicable law Consultant may be entitled to claim any interest in the Deliverables or any other Work Product or exclusive title and/or ownership rights may not

---

[3]   The Consulting Agreement is attached to the Complaint as Exhibit B.  *See* Agreement, ECF No. 1-2.

[4]   Preston's Complaint does not reference Section 9.A, and Preston instead relies exclusively on Section 9.B. as the basis for its arguments in opposition to the motion to dismiss. Similarly, Customers Bank's motion to dismiss does not reference Section 9.B, instead relying exclusively on Section 9.A.  For clarity and comprehensiveness, the Court reproduces these two sections of the Agreement in their entirety.

> originally vest in Company as contemplated by this Section 9, Consultant hereby irrevocably transfers, grants, conveys, assigns, and relinquishes exclusively to Company all of Consultant's right, title, and interest in and to such Work Product, including all Intellectual Property Rights contained in or derived from any such Work Product, in perpetuity or for the longest period otherwise permitted by law.
>
> **B.** License to use Consultant's Copyrighted SBA Paycheck Protection Program Workbook. Subject to the limitations in this Agreement, Consultant grants Client an irrevocable, nonexclusive, royalty-free and limited right and license to access and use Consultant's SBA Paycheck Protection Program (PPP) Workbook until October 20, 2021. Company's information entered and contained within the SBA PPP Workbook shall be owned by and confidential to the Company. Consultant's SBA PPP Workbook format is copyrighted and exclusively owned by Consultant. The SBA PPP Workbook shall be prepared for the Company's confidential use and may be used by the Company for PPP borrowers generated by internal Company staff only and may be used by any regulatory agency during review. Except as specified in Section 9(B) above, during the term of this Agreement and any extensions thereof, Consultant shall not grant any rights to any third party in connection with the SBA PPP Workbook or any derivative thereof without Consultant's approval.

Agreement § 9.A-9.B.

Preston claims that Defendants have reproduced, publicly displayed, and distributed the PPP Workbooks by unlawfully creating two derivative works—a webinar video and a corresponding slide deck, both of which include screenshots of PPP Workbook 3.3 08.31.2020 (without Plaintiff's copyright notice)—and publishing them on the Customers Bank website for public access. Compl. ¶ 51. According to Preston, in the webinar video created and shared by Defendants, Defendant Timothy Romig of Customers Bank claims that Customers Bank created the PPP Workbooks when he states that "[Co-Defendant Timothy Anderson] will walk you through the e-workbook we created to help you enter data for the application that will be used to calculate your loan forgiveness." *Id*. ¶ 53. Preston avers that, on information and belief, Defendants have used the PPP Workbooks to review and/or process one or more loan forgiveness applications for PPP borrowers generated by third parties outside the scope of the

license granted under the Consulting Agreement. *Id*. ¶¶ 54-56. According to Preston, through these and similar activities, Defendants have utilized the PPP Workbooks in a manner that diminishes their value to Preston and deprives Preston of its exclusive right to sell access to the Workbooks to third parties. *See id*. ¶¶ 61-63. Preston states it has not authorized, consented to, or had knowledge of Defendants' use of the PPP Workbooks in the manner described, and Defendants have not accounted to or otherwise paid Preston for their unauthorized use of the PPP Workbooks in this manner. *Id*. ¶¶ 57, 66-68.

On these allegations, Preston asserts the following seven causes of action: copyright infringement (Count One), *see id*. ¶¶ 70-81; breach of contract (Count Two), *see id*. ¶¶ 82-87; unfair competition under federal law (Count Three), *see id*. ¶¶ 88-95; unfair competition under Pennsylvania common law (Count Four), *see id*. ¶¶ 96-103; misappropriation of trade secrets under federal law (Count Five), *see id*. ¶¶ 104-14; misappropriation of trade secrets under Pennsylvania law (Count Six), *see id*. ¶¶ 115-25; and unjust enrichment (Count Seven), *see id*. ¶¶ 126-29.

      **B.**     **Procedural Background**

Preston commenced this action with the filing of its Complaint on December 29, 2020. *See* ECF No. 1. This Court issued its Initial Procedural Order on the same day. *See* ECF No. 2. Defendants filed their motion to dismiss the Complaint on March 1, 2021, *see* ECF No. 6, Preston's response to which was filed on March 22, 2021, *see* ECF No. 6. Defendants filed their reply in further support of the motion on April 6, 2021. *See* ECF No. 7.

### III.   LEGAL STANDARD—FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the appropriate pleading standard in civil cases and set forth the approach to be used when deciding motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

After identifying a claim's necessary elements,[5] district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679; *see id*. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *Thourot v. Monroe Career & Tech. Inst*., No. CV 3:14-1779, 2016 WL 6082238, at *2 (M.D. Pa. Oct. 17, 2016) (explaining that "[a] formulaic recitation of the elements of a cause of action" alone will not survive a motion to dismiss). Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Next, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This standard, commonly referred to as the "plausibility standard," "is not comparable to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

---

[5]   The Third Circuit has identified this approach as a three-step process, with identification of a claim's necessary elements being the first step. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 n.4 (3d Cir. 2016) ("Although *Ashcroft v. Iqbal* described the process as a 'two-pronged approach,' 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675-79. Thus, we have described the process as a three-step approach.") (citation omitted).

unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556-57).  It is only where the "[f]actual allegations . . . raise a right to relief above the speculative level" that the plaintiff has stated a plausible claim.[6]  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

Therefore, the Court's task in deciding a motion to dismiss for failure to state a claim is to determine the following: whether, based upon the facts as alleged, which are taken as true, and disregarding legal contentions and conclusory assertions, the complaint states a claim for relief that is plausible on its face in light of the claim's necessary elements.  *Iqbal*, 556 U.S. at 679; *Ashford v. Francisco*, No. 1:19-CV-1365, 2019 WL 4318818, at *2 (M.D. Pa. Sept. 12, 2019) ("To avoid dismissal under Rule 12(b)(6), a civil complaint must set out sufficient factual matter to show that its claims are facially plausible."); *see Connelly*, 809 F.3d at 787.

In conducting this analysis, the scope of what a court may consider is necessarily constrained: a court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *United States v. Gertsman*, No. 15 8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013)).  A court adjudicating a Rule 12(b)(6) motion may also take judicial notice of certain undisputed facts.  *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

---

[6]  As the Supreme Court has observed, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

IV.     ANALYSIS

Defendants raise the following arguments in support of their motion to dismiss the Complaint in its entirety: that (1) Preston fails to allege sufficient facts against Defendants Romig, Anderson, or Customers Bancorp to state any conceivable claims against them; (2) all of Preston's tort-based claims should be dismissed under the "gist of the action" doctrine; (3) Preston's misappropriation of trade secrets claims fail because it has failed to allege the material at issue constitutes "trade secrets," and it cannot allege that it owns any such trade secrets under the terms of the Consulting Agreement; (4) Preston's copyright infringement claim fails because it cannot demonstrate ownership of a valid copyright under the terms of the Consulting Agreement; (5) Preston's unjust enrichment claim fails because a written agreement governs the parties' relationship; and (6) Preston's breach of contract claim fails under the terms of the Consulting Agreement, as Customers Bank owns the at-issue material.  *See* Defendants' Memorandum in Support of their Motion to Dismiss ("Defs.' Mem."), ECF No. 3-1 at 6-8.

A.      **Claims Against Timothy Romig, John Anderson, and Customers Bancorp**

A corporate officer may be held "individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 402 (M.D. Pa. 2013) (quoting *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3rd Cir. 1978)).  This principle holds for unfair competition, copyright infringement, and similar claims.  *See Donsco*, 587 F.2d at 606 (collecting cases). While it appears that Preston attempts to assert all claims except Count Two against Romig and Anderson, the Court agrees with Defendants that the allegations against these individuals are too threadbare to plausibly state any claims.  All the Complaint alleges as to these Defendants is (1) Romig's statement in a webinar, which mentions that Anderson "will walk you through the e-

workbook we created," Compl. ¶¶ 12, 53, and that (2) Romig is the Executive Vice President of Customers Bank and Anderson is the Eastern Sales Manager of Customers Bank, *id*. ¶¶ 23-24. Simply put, Preston does not connect the dots between these several allegations and the elements of the claims which it is attempting to assert against Romig and Anderson.  *See KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 794 (E.D. Pa. 2011) (concluding that where "the *only* factual allegations specific to [a corporate officer] in the counterclaims are that (1) [the officer] was Vice President of [several corporate entities] at relevant time periods, (2) [he] served briefly as project manager [relative to alleged unlawful conduct], and (3) [he] sent one email," that "[t]hese facts fail to state claims against [the officer] even under the liberal pleading standards of Rule 8(a). Fed. R. Civ. Pro. 8(a)"; "[t]he three allegations regarding [the officer's] tenure as VP, project manager, and as the sender of one email do not contain sufficient factual matter for the Court to draw the reasonable inference that Knell is liable for *any* of the misconduct alleged") (emphasis in original).[7]

With regard to Customers Bancorp, the only allegation in the Complaint is that "[u]pon information and belief, Defendant, Customers Bancorp, Inc., is a financial institution formed under the laws of Pennsylvania and does business in Phoenixville, Pennsylvania."  Compl. ¶ 22. This is far from sufficient to state a viable claim against Customers Bancorp, especially when the

---

[7]     Preston argues in its opposition brief that the allegations against Romig and Anderson are sufficient to place them on notice of claims against them, and the opposition brief goes further in connecting the dots between the Defendants' alleged conduct and the underlying claims against them.  *See* Plaintiff's Memorandum in Opposition ("Pl.'s Opp'n."), ECF No. 6-1, at 5.  However, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  As explained further below, the Court will permit Preston to amend its Complaint to reassert claims against Romig and Anderson.  The allegations contained in Preston's opposition brief would likely go a long way in remedying the deficiencies outlined here.

standard for veil-piercing is considered. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) ("[I]n order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such."). As with Romig and Anderson, Preston in its opposition brief argues that "the well-pleaded facts of the complaint establish that Defendant Customers Bancorp could be liable to Plaintiff. Among other things, Defendant Customers Bancorp wholly owns Defendant Customers Bank and, on information and belief, the entities are so interrelated that that Defendant Customers Bank is the alter ego of Defendant Customers Bancorp." Pl.'s Opp'n. at 6. But there are no citations to the Complaint, and it is not clear where in the Complaint these allegations are made. As previously noted, Preston cannot amend its Complaint by way of its opposition brief. *See PepsiCo, Inc.*, 836 F.2d at 181.

For the reasons set forth above, Preston fails to state any claim against Romig, Anderson, or Customers Bancorp. These claims are therefore dismissed without prejudice. Preston shall have an opportunity to reassert claims against these Defendants by way of an Amended Complaint.[8]

**B.     "Gist of the Action" Doctrine**

"Pennsylvania's gist of the action doctrine precludes a plaintiff from bringing what is actually a breach of contract claim as a tort claim." *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 677 (E.D. Pa. 2018) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014)). "When the parties' obligations are defined by the terms of a contract and not by duties imposed by social policies, a plaintiff may assert only a contract claim." *Id*. (citing *Bruno*, 106 A.3d at

---

[8]     Should Preston decide to reassert claims against these Defendants, its Amended Complaint shall state specifically which claims are being asserted against which Defendants.

68).  The Pennsylvania Supreme Court has summarized its jurisprudence on the "gist of the action" doctrine as follows:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract— i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno*, 106 A.3d at 68 (citations and footnote omitted).  The gist of the action doctrine generally "bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Certainteed Ceilings Corp. v. Aiken*, No. CIV.A. 14-3925, 2015 WL 410029, at *7 (E.D. Pa. Jan. 29, 2015) (quoting *Brown & Brown, Inc. v. Cola,* 745 F. Supp. 2d 588, 619-20 (E.D. Pa. 2010)).

The Court finds that the "gist of the action" doctrine operates to bar Preston's unfair competition and misappropriation of trade secret claims (Counts Three, Four, Five, and Six).  The Court agrees with Defendants that these four claims are alleging a breach of a duty not created by social policy, but rather by the Consulting Agreement.  To put it differently, it is not the case that the contract (here, the Consulting Agreement) is "collateral" to these claims.  *See*

*Snyder Heating Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 715 A.2d 483, 487 (Pa. Super. Ct. 1998).

This is illustrated by the manner in which Preston pleads these claims. The alleged "unauthorized" nature of Defendants' use of the PPP Workbooks is the heart of the way Preston pleads its unfair competition claims. *See* Compl. ¶¶ 89-91, 97-11. The mechanism that failed to "authorize" Defendants' conduct with respect to these claims is the Consulting Agreement; the conduct for which Preston seeks relief is its alleged breach. Similarly, Preston pleads as part of its misappropriation of trade secret claims that "Defendants had access to Plaintiff's confidential information and trade secrets by virtue of the license Customers Bank was granted under Consulting Agreement," *id*. ¶¶ 109, 120, and that "Plaintiff did not consent to Defendants' use of its trade secrets beyond the limited scope set forth in the Consulting Agreement.," *id*. ¶¶ 110, 121. The liability Preston is alleging in these claims tracks its breach of contract claim: Preston is claiming Defendants exceeded the scope of their authority under the Consulting Agreement—something for which Preston did not contract and as a result of which it has allegedly suffered harm. *See, e.g.*, *Certainteed Ceilings Corp.*, 2015 WL 410029, at *8 ("With respect to the claim for misappropriation of trade secrets and confidential information, the Third Circuit [in *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 106 (3d Cir. 2001)] distinguished between the different types of information that were at issue. The Third Circuit held that the misappropriation claim was barred by the gist of the action doctrine to the extent it relied on misappropriation of information covered by the 'Know–How Agreement' portions of the parties' joint venture agreement.").

For the reasons stated above, Preston's unfair competition and misappropriation of trade secret claims are barred by the "gist of the action" doctrine. These claims are therefore

dismissed, with prejudice. *See Herley Indus., Inc. v. R Cubed Eng'g, LLC*, No. 5:20-CV-02888, 2021 WL 229322, at *5 (E.D. Pa. Jan. 22, 2021) ("Courts are permitted to apply the doctrine at the pleading stage 'to dismiss what are in reality contract claims, with prejudice.'" (quoting *Reginella Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 971 F. Supp. 2d 470, 475 (W.D. Pa. 2013), *aff'd sub nom.*, 568 F. App'x 174 (3d Cir. 2014)).

      C.      **Preston's Copyright Infringement Claim**

With respect to Preston's copyright infringement claim, the Court finds that (1) this claim is not barred by the "gist of the action" doctrine, and further (2) Preston has adequately made out this claim.

With regard to the "gist of the action" doctrine, the Court finds that unlike Preston's claims of unfair competition and misappropriation of trade secret, which were duplicative of its breach of contract claim, Preston's copyright infringement claim alleges a breach of duties that are independent of those under the Consulting Agreement. While the Consulting Agreement may have facilitated the sharing of Preston's copyrighted work, Defendants' alleged infringement of the copyright would be redressable with or without the existence of the Consulting Agreement. That is to say, the Consulting Agreement truly is "collateral" to the alleged tortious infringement of Preston's copyright. *See Snyder Heating Co.*, 715 A.2d at 487.

Turning to the sufficiency of Preston's allegations, "[t]o establish a claim of copyright infringement, a plaintiff must show: '(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.'" *Tanksley v. Daniels*, 902 F.3d 165, 172-73 (3d Cir. 2018) (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). "[T]o survive a motion to dismiss, a [copyright infringement] claim must allege: '(1) which specific original works are the subject of the copyright claim;

(2) ownership of the copyrights in those works; (3) registration of the works in question with the Copyright Office in accordance with 17 U.S.C. §§ 101, *et seq.*; and (4) by what acts the defendant infringed the copyright.'" *Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, No. CV 20-613, 2021 WL 1174725, at *4 (D. Del. Mar. 29, 2021) (quoting *Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.*, 125 F. Supp. 3d 497, 501 (D. Del. 2015)).

Here, Preston has pleaded (1) the existence of specific original works that are subject to a copyright, (2) ownership, (3) registration, and (4) by what conduct Defendants here have infringed.  Defendants challenge Preston's copyright infringement claim not on the content of the Complaint, but by arguing "the unambiguous terms of the Consulting Agreement" prove fatal to Preston's claim—specifically, by divesting Preston of ownership of any copyright in the PPP Workbooks.  Defs.' Mem. at 19.[9]  While Defendants raise challenges to Preston's allegations about the existence, ownership, and scope of any copyright based on their interpretation of the Consulting Agreement and what it grants to (or divests from) each party, at this stage of the proceedings the Court is required to accept Preston's well-pleaded factual allegations as true— unless contradicted by the unambiguous language of the Consulting Agreement.

This is the problem with Defendants' argument here: they have asked the Court to interpret the terms of the Consulting Agreement as a matter of law, specifically, Section 9.A's provisions that "all copyrightable material generated or developed under this Agreement shall . . . be owned exclusively by Company," and that "Consultant hereby irrevocably transfers, grants, conveys, assigns, and relinquishes exclusively to Company all of Consultant's right, title, and interest in and to such Work Product."  "While unambiguous contracts are interpreted by the

---

[9]     Alternatively, Defendants argue that even if Preston owns a copyright, it is too narrow to support a claim.  *See id*. at 20.  The Court has considered this argument and, in the context of the instant motion, declines to the dismiss the copyright infringement claim on this basis.

court as a matter of law, ambiguous writings are interpreted by the finder of fact." *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 796 (E.D. Pa. 2011) (quoting *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004)). Here, the Court cannot say that the relevant terms of the Consulting Agreement are unambiguous. Specifically, while the above language of Sections 9.A might seem unambiguous in isolation, when read with the language of Section 9.B—that "Consultant grants Client . . . a *limited* right and license" to access ad use the PPP Workbook (emphasis added); that "Consultant's SBA PPP Workbook format is copyrighted and exclusively owned by Consultant"; and that "Consultant shall not grant any rights to any third party in connection with the SBA PPP Workbook or any derivative thereof without Consultant's approval"—it is not unambiguous that Customers Bank's is the exclusive owner of the copyrighted material at issue here. It would therefore be improper to dismiss the copyright infringement claim at this stage of the proceedings. *See, e.g.*, *KDH Elec. Sys., Inc.*, 826 F. Supp. 2d at 797 ("At this stage, ambiguity in the agreement is sufficient to overcome the motion to dismiss."); *Whelan v. CareerCom Corp.,* 711 F. Supp. 198, 200 (M.D. Pa. 1989) (denying a motion to dismiss where there existed two reasonable interpretations of relevant contract language).

At this stage of the proceedings, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). In light of the ambiguity highlighted above, the Court declines to dismiss Preston's copyright infringement

claim at this time, and similarly declines Defendants' invitation to dismiss Preston's claim for statutory damages and attorneys' fees.[10]

### D. Preston's Breach of Contract and Unjust Enrichment Claims

Turning to Preston's final two claims, breach of contract and unjust enrichment, Defendants attack the first by again arguing that the unambiguous language of the Consulting Agreement divests Preston of any ownership interest in the PPP Workbooks, and one cannot be in breach of an agreement by making use of something the agreement confers ownership in. *See* Defs.' Mem. at 23-24. For reasons already discussed, given the ambiguity of the Consulting Agreement's terms when read in their entirety, Defendants' argument is rejected and dismissal of Preston's breach of contract claim would be premature. Because Preston has adequately pleaded the elements of a breach of contract claim under Pennsylvania law—the existence of a contract, breach of a duty imposed by the contract, and resulting damages, *see Herley Indus.*, 2021 WL 229322, at *4-*5—its breach of contract claim survives Defendants' motion to dismiss.

Finally, with regard to Preston's unjust enrichment claim, the Court finds that this claim also survives Defendants' motion to dismiss. Defendants' primary argument for dismissal of this claim is that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract," and here "it is undisputed that the relationship between Preston and Customers Bank is based on an express written contract." Defs.' Mem. at 25.

---

[10] These are remedies, and according to Defendants themselves, they are predicated on an underlying factual dispute regarding the chronology of registration and the alleged infringement. *See* Defs.' Mem. at 22. For these two reasons, it would be premature to address them at this time.

Defendants are correct on both points, but are incorrect that this means Preston's unjust enrichment claim must be dismissed at this stage of the litigation. This is because Preston may plead its claims in the alternative: Federal Rule of Civil Procedure 8 explicitly provides that a "party may state as many express claims or defenses it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). "This Rule permits inconsistency in both legal and factual allegations and has been interpreted to mean that a court may not construe a plaintiff's first claim as an admission against another alternative or inconsistent claim." *Indep. Enters. Inc. v. Pitt. Water & Sewer Auth.,* 103 F.3d 1165, 1175 (3d Cir. 1997) (citation, alteration, and internal quotation marks omitted). The presence of a written contract in the form of the Consulting Agreement therefore does not—at least not yet—doom Preston's unjust enrichment claim. *See Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 445-46 (E.D. Pa. 2013) ("The Court reiterates that this litigation is at the motion to dismiss stage. That APT may not ultimately *recover on both* a breach of contract claim and an unjust enrichment claim does not impugn the well settled principle that under both federal law and Pennsylvania law a plaintiff *may plead* both.") (emphasis in original).

Since Preston has otherwise stated the necessary elements of an unjust enrichment claim under Pennsylvania law—(1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value, *see Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999); *see, e.g.*, Compl. ¶¶ 51-53, 62, 65, 126-29—this claim survives Defendants' motion to dismiss.[11]

---

[11] Preston states that this claim "does not arise from conduct governed by the Consulting Agreement" but from "Defendants' tortious misappropriation of [its] intellectual property and in particular, its trade secrets." Pl.'s Opp'n. at 19. While the Court has dismissed Preston's

V.     **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is granted as to all claims against Defendants Romig, Anderson, and Customers Bancorp; these claims are dismissed, without prejudice.  Preston may file an Amended Complaint to re-plead its claims against these Defendants.  The motion to dismiss is also granted as to Preston's unfair competition claims and misappropriation of trade secret claims; these claims are dismissed, with prejudice, under the "gist of the action" doctrine.  Defendants' motion to dismiss is denied in all other respects.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

misappropriation of trade secrets claims, it has done so *because* they are duplicative of its breach of contract claim.  *See, e.g.*, Compl. ¶¶ 109-10, 120-21.